UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH STONE,

        Petitioner,                                     Hon. Janet T. Neff

v.                                                      Case No. 1:14-CV-738

BONITA HOFFNER,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on Stone's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Stone's petition be **denied**.

## BACKGROUND

        As a result of events which occurred on January 17, 2009, Petitioner was charged with: (1) carjacking; (2) unarmed robbery; (3) resisting and obstructing a police officer; and (4) being a habitual offender.[1] (ECF No. 10-3 at PageID.132-33). Petitioner subsequently entered into a plea agreement pursuant to which he agreed to plead guilty to all charges in return for an

---

[1] Specifically, Petitioner was charged with having been previously convicted of "3 or more felonies or attempts to commit felonies." Mich. Comp. Laws § 769.12.

agreement that his sentences would all run concurrently.[2]  (ECF No. 10-3 at PageID.132-33). Petitioner was sentenced to serve 5-15 years for resisting and obstructing and 20-50 years each for carjacking and unarmed robbery.  (ECF No. 10-4 at PageID.139-40).

Petitioner subsequently moved in the Michigan Court of Appeals for leave to appeal, asserting the following claim:

> I. The Defendant contends that he is actually innocent, but pleaded guilty on advice of counsel to avoid a harsher sentence if convicted after trial, and contends that counsel advised him the sentence after the plea would be at or near the bottom of the guidelines [i.e., 10 or 11 years], but which was actually closer to the mid-range of the guidelines [i.e., 20 years]. Counsel was ineffective for not making it clear to the Defendant, and the plea, as a result was defective and not fully voluntary, intelligently, and/or knowingly made.

The Michigan Court of Appeals denied Petitioner leave to appeal "for lack of merit in the grounds presented."  (ECF No. 10-9 at PageID.280).  The Michigan Supreme Court rejected Petitioner's application for leave to appeal this determination, stating that "we are not persuaded that the question presented should be reviewed by this Court."  (ECF No. 10-9 at PageID.275). Petitioner thereafter filed in the trial court a motion for relief from judgment asserting the following claims:

> I. Clear error has caused a miscarriage of justice, invalidating the defendant's sentences and violating his right to due process of law, where the court (a) judicially intimidated the defendant, rendering his plea involuntary and invalid; (b) accepted defendant's plea without sufficient evidentiary or factual basis;

---

[2] Under Michigan law, carjacking is "a felony punishable by imprisonment for life or for any term of years." Mich. Comp. Laws § 750.529a(1).  Moreover, a sentence for carjacking "may be imposed to run consecutively to any other sentence imposed for a conviction that arises out of the same transaction."  Mich. Comp. Laws § 750.529a(3).

        and (c) where the Michigan Court of Appeals denied the defendant's right to raise supplemental issues.

II.     Defendant was denied the effective assistance of counsel, guaranteed by the federal and state constitutions, where defense counsel: (a) failed to protect client from judicial intimidation; (b) failed to relay pertinent information to client; and (c) failed to investigate, prepare a defense, or negotiate an intelligent plea.

III.    The following sentencing errors are violative of the defendant's due process rights where the court: (a) sentenced the defendant based on inaccurate information in the presentence report; (b) failed to make the proper corrections to the P.S.I. report prior to forwarding it to the M.D.O.C.; (c) erroneously scored points for OV-19; and (d) departed from sentencing guidelines.

IV.    Appellant/Mr. Stone was denied the effective assistance of counsel, guaranteed by the federal and state constitutions, where his appellate counsel: (a) failed to adequately argue trial counsel's ineffectiveness and judicial intimidation; (b) failed to investigate and raise claims; and (c) failed to apprise client of right to file pro per supplemental brief or protect client's rights to do so.

The trial court denied Petitioner's motion on both procedural and substantive grounds. (ECF No. 10-7 at PageID.241-52). Petitioner appealed the matter to both the Michigan Court of Appeals and the Michigan Supreme Court both of which denied Petitioner leave to appeal on the ground that Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D). (ECF No. 10-10 at PageID.322, 332). Petitioner initiated the present action on July 9, 2014. He later amended his petition to assert the following claims:

    I.     Ineffective assistance of counsel.

    II.    Judicial participation/intimidation.

3

**STANDARD OF REVIEW**

Stone's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect

that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds

unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where

6

state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

I.        **Ineffective Assistance of Counsel**

In his amended petition, Stone argues that his trial attorney's performance was deficient "because he improperly advised [him] that his guilty plea would result in a lesser sentence than was actually imposed, and failed to investigate valid claims that would have aided in [his] defense." (ECF No. 5 at PageID.46).

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 562 U.S. at 121 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 562 U.S. at 121 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 562 U.S. at 121-22 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 562 U.S. at 122 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 562 U.S. at 122 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

In the context of a guilty plea, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Railey v. Webb*, 540 F.3d 393, 415 (6th Cir. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). Thus, to establish prejudice in the context of a guilty plea, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also*, *Lafler v. Cooper*, 132 S.Ct. 1376, 1384-85 (2012) (quoting *Hill*, 474 U.S. at 59).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 562 U.S. at 122. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against

8

> the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo*, 562 U.S. at 122-23 (internal citations omitted).

Petitioner's claim that his attorney advised him that his guilty plea would result in a lesser sentence than was actually imposed is flatly contradicted by Petitioner's testimony at his plea hearing. The terms of the plea agreement, that Petitioner's sentences all be served concurrently, was placed on the record. (ECF No. 10-3 at PageID.132-35). Petitioner explicitly testified, under oath, that his decision to plead guilty was based solely on the terms of the plea agreement and was not based on any promises or statements that were not presented on the record during the plea proceedings. (ECF No. 10-3 at PageID.132-35). However, other than informing Petitioner of the possible sentences he faced if he was convicted of the various charges and outlining the terms of the plea agreement, there was no discussion during the plea proceedings concerning Petitioner's sentence. (ECF No. 10-3 at PageID.132-35). Specifically, there was no discussion regarding the possible length of Petitioner's sentence. (ECF No. 10-3 at PageID.132-35).

In sum, Petitioner cannot establish that his attorney promised him that if he pleaded guilty he would receive a lesser sentence than was actually imposed. More significantly, Petitioner cannot establish that even had his attorney not made any such alleged assurances that he would have declined to accept the plea bargain and would have instead proceeded to trial. As noted above, Petitioner, prior to the events giving rise to this action, had been convicted previously of committing or attempting to commit at least three felony offenses. Given his status as an habitual offender, Petitioner faced a possible sentence on the armed robbery charge of life in prison or a lesser term

9

of years. (ECF No. 10-3 at PageID.132-33). As noted above, a conviction for carjacking carries with it a possible penalty of imprisonment for life or a lesser term of years. Moreover, a sentence for carjacking may be imposed to run consecutively to any other sentence imposed for crimes committed in the same transaction.

Petitioner faced, therefore, the very real possibility that if he went to trial and was convicted of both armed robbery and carjacking that he would receive lengthy prison terms for each crime which would then be served consecutively. By agreeing to the plea agreement, Petitioner eliminated this possibility. This was an eminently rational decision which effectively cut his sentence in half by removing the possibility that he serve 20-50 years for armed robbery followed by a 20-50 year consecutive sentence for carjacking. Thus, Petitioner received a very real benefit from his plea bargain and Petitioner has failed to demonstrate that absent his attorney's alleged promises regarding the length of his sentences he would have instead gone to trial and risked the possibility of serving lengthy consecutive sentences.

As for Petitioner's claim that his attorney failed to investigate claims that would have benefitted his defense, Petitioner has failed to establish the existence of any facts or circumstances that would have made his conviction for these various crimes any less likely. More to the point, Petitioner has failed to demonstrate that even if such alleged facts or circumstances would have been investigated he would have declined to accept the plea agreement and would have instead proceeded to trial.

The Michigan courts rejected Petitioner's ineffective assistance of counsel claim. In light of the authority above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal

law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

**II.        Due Process**

In his amended petition, Stone asserts that "[t]he Circuit Court Judge's participation in plea negotiations were inappropriate and resulted in a violation of Mr. Stone's due process rights."  (ECF No. 5 at PageID.47).  Petitioner fails to elaborate on this argument or articulate the manner in which his due process rights were allegedly violated.  Judging from Petitioner's state court pleadings, however, it appears that Petitioner is asserting that the trial judge "intimidated [him] rendering his plea involuntary and invalid" and "accepted [his] plea without sufficient evidentiary or factual basis."  (ECF No. 10-10 at PageID.339, 370-80).

       A.        Factual Basis for Plea

Petitioner's claim that he is entitled to relief because the record allegedly does not contain an adequate factual basis to sustain his convictions is without merit because "[a]bsent a claim of innocence during the plea hearing,[3] there is no constitutional requirement that a trial judge inquire into the factual basis of a plea."  *Eggers v. Warden*, 826 F.3d 873, 876 (6th Cir. 2016) (quoting *Roddy v. Black*, 516 F.2d 1380 (6th Cir. 1975)).  So long as a guilty plea "is intelligently and voluntarily entered, the federal constitution does not mandate that a factual basis supporting a

---

[3] Petitioner did assert or otherwise suggest during the plea hearing that he was innocent of the crimes with which he was charged.

11

guilty plea be established, or even that the defendant admit factual guilt." *Hann v. Caruso*, 2012 WL 2564818 at *7 (E.D. Mich., July 2, 2012).

### B. Voluntariness of Guilty Plea

Petitioner asserts that the trial judge "intimidated" him into involuntarily agreeing to plead guilty. A guilty plea is more than an admission that the accused performed certain acts, but is instead "a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Following a guilty plea "nothing remains but to give judgment and determine punishment." *Id.* By pleading guilty a criminal defendant surrenders several important constitutional rights, including (a) the privilege against compelled self-incrimination; (b) the right to trial by jury; and (c) the right to confront one's accusers. *Id.* at 243. To ensure that a criminal defendant is not improperly deprived of these (and other) rights, to be valid a guilty plea must be made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

The *Boykin* Court identified certain rights (identified immediately above) which a criminal defendant waives by pleading guilty. While the *Boykin* Court made clear that waiver of these (and other) rights cannot be assumed, the Court did not hold that a guilty plea is valid only where a criminal defendant was first notified as to each and every right he would be waiving by pleading guilty. *Boykin*, 395 U.S. at 243-44. In fact, less than one year after its *Boykin* decision the Supreme Court, in *Brady v. United States*, 397 U.S. 742 (1970), upheld the validity of a guilty plea even though the defendant had not been specifically advised of the rights identified by the *Boykin* Court. *Id.* at 743-58. With respect to its *Boykin* decision, the Court clarified its significance stating

that "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747 n.4.

Accordingly, as other courts have since recognized, neither *Boykin* nor any other Supreme Court authority requires that a criminal defendant be specifically advised of any particular rights before his guilty plea can be deemed constitutionally valid. *See, e.g., Threadgill v. Galaza*, 2006 WL 2084165 at *3 (E.D. Cal., July 25, 2006) ("specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea;" if the "record demonstrates that a guilty plea is knowing and voluntary, no particular ritual or showing on the record is required"); *United States v. Toles*, 1992 WL 129284 at *3 (9th Cir., June 4, 1992) ("*Boykin* does not require that the trial judge specifically list each right waived by a defendant who pleads guilty"); *Carter v. Brooks*, 2001 WL 169584 at *6-7 (D. Conn., Feb. 13, 2001) (the Supreme Court has "in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea" and "a guilty plea will not be invalidated simply because of the district court's failure. . .to enumerate one or more of the rights waived by the defendant as the result of such a plea"); *United States v. Smith*, 1990 WL 92601 at *2 (9th Cir., July 5, 1990) (the standard is not whether the trial judge specifically articulated certain rights, but whether "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

Accordingly, the relevant question is not whether the trial judge specifically articulated or identified for Petitioner a list of the various rights he would be surrendering by pleading guilty. Rather, as noted above, the question is whether Petitioner's decision to plead guilty was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant

circumstances and likely consequences." The plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Wilkerson v. Jones*, 109 Fed. Appx. 22, 23 (6th Cir., Aug. 6, 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Determining whether a guilty plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

As previously noted, the terms of the plea bargain were discussed on the record. Petitioner testified that he understood the charges against him, as well as the possible penalty that could be imposed if convicted. (ECF No. 10-3 at PageID.132-35). Petitioner testified that he executed an Advice of Rights form detailing the various rights he would be surrendering if he pleaded guilty. (ECF No. 10-3 at PageID.132-35). Petitioner testified that he understood that by pleading guilty he would be surrendering the rights described therein. (ECF No. 10-3 at PageID.132-35). Petitioner testified that his decision to plead guilty was voluntary and that nobody had threatened him or promised him anything other than what was stated on the record. (ECF No. 10-3 at PageID.132-35).

Petitioner counters this evidence by pointing to a subsequent hearing the trial court conducted on Petitioner's motion to withdraw his guilty plea. (ECF No. 10-5 at PageID.141-47). At this hearing, Petitioner conceded that "[t]he record appears on its face certainly a clean plea, and we don't have any obvious defect, and he acknowledges there's no other promises, there's no other threats or coercion or anything like that." (ECF No. 10-5 at PageID.142). Petitioner nevertheless asserted that he was entitled to relief because he and his mother were "led to believe that the sentence would be, although there was no set or specified sentence discussed or promised or acknowledged on the record, that it would be at the lowest end of the guidelines." (ECF No. 10-5

at PageID.142).

In response to this argument, the trial judge asked, "isn't the whole purpose of the plea-taking procedure as set forth in the rule to get everything out in the open and avoid these problems?" (ECF No. 10-5 at PageID.143). After Petitioner acknowledged as much, the judge continued:

> And the Rule was amended a number of years ago to make all this crystal clear, and even to the point of putting the defendant under oath so that he states under oath what the situation is, and if that doesn't mean anything, and if anytime a defendant after he goes down to prison says, you know, I think I got more than I should have, can come back and upturn the apple cart, that there's really nothing the court can do to avoid it, we would have to do this any time a defendant got into this position. . .But I guess my thinking is that shouldn't the defendant, if the plea offer is not as he understands it to be, speak up and say, 'Now, that isn't right, I thought my deal was such-and-such." And here of course we have the defendant saying that the agreement has been correctly stated.

(ECF No. 10-5 at PageID.143).

Petitioner argued that during a pre-plea status conference there was discussion that his sentence would be at the low end of the guidelines range. (ECF No. 10-5 at PageID.142-43). The prosecutor asserted, however, that the plea agreement presented to Petitioner offered concurrent sentencing, but contained no promise or recommendation as to length of sentence. (ECF No. 10-5 at PageID.143-44). This assertion is consistent with the trial judge's notes concerning the status conference and Petitioner presents no evidence to the contrary. (ECF No. 10-5 at PageID.143). Moreover, as already noted, Petitioner testified under oath at the plea hearing that his plea agreement contained no provision regarding the length of his sentence. Finally, while the plea agreement did not address the length of Petitioner's sentence, the trial judge noted that his "practice has generally been to sentence [defendants who plead guilty] below the midpoint of the guideline range, which

is what we did here." (ECF No. 10-5 at PageID.143).

Considering the totality of the circumstances, any claim that Petitioner's guilty plea was not offered voluntarily, knowingly, and intelligently is without merit. Accordingly, the Court concludes that the denial of this claim by the state courts was neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, such was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Stone's petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: November 15, 2016
/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge